NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

DAJUAN DAVIS DAVIS, *Appellant*.

No. 1 CA-CR 23-0436

FILED 10-10-2024

---

Appeal from the Superior Court in Maricopa County
No.  CR2022-143989-001
The Honorable Michael S. Mandell, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

---

**T H U M M A**, Judge:

¶1        Defendant Dajuan Davis Davis appeals his convictions and resulting sentences for unlawful flight and a false, incomplete or misleading insurance claim. Because Davis has shown no error, his convictions and resulting sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Viewing the facts in a light most favorable to sustaining the convictions, *see State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998), on October 28, 2022, at 2:57 p.m., a Chase Bank in Goodyear, Arizona was robbed at gunpoint. The robber left with about $4,000 in cash.

¶3        A retired law enforcement officer was leaving a nearby parking lot when he saw someone running from the Chase Bank and then getting into a green Toyota Camry. The retired officer called Goodyear police to ask if anything had been reported near the area. The dispatcher responded that the Chase Bank had been robbed. The retired officer then followed the Camry, providing updates on its location until he saw police respond. During the pursuit, the retired law enforcement officer was able to identify the Camry's license plate. The retired law enforcement officer also saw at least three individuals in the Camry, but he could not provide details about any of them.

¶4        Goodyear police then located a Camry that fit the same description on Interstate 10. A police motorcycle and an unmarked police vehicle activated their emergency lights and sirens. The Camry responded by speeding away, swerving through traffic lanes. The officers could not identify the driver. After starting to exit, the Camry then swerved onto the curb, through gravel, and got back on I-10. At that point, the officers stopped the chase given safety concerns. Using the license plate number, the officers learned Davis owned the Camry.

¶5　　　　At 3:20 p.m., a few minutes after the chase stopped, Glendale police received a call about a Camry being stolen in a parking lot near the Westgate Entertainment District (Westgate). A Glendale police officer responded and spoke with Davis, who was wearing a short sleeve hoody with a pink flamingo and a white outline of the grim reaper on the back, on top of a gray sweater and gray sweatpants. Davis told the officer that he and a friend approached two men to buy some marijuana. Davis, his friend, and the two other men went to the Camry so Davis could get his wallet. When they reached the car, Davis said one of the two men they had just met pulled a gun, told Davis to give them everything and then they took the Camry. When making this statement, the Glendale police officer did not know about the bank robbery in Goodyear, or the subsequent chase involving the Camry. The officer did, however, learn of the robbery about an hour after speaking with Davis.

¶6　　　　Later that same day, the same Glendale police officer responded to a reported collision involving a green Camry running into a tree in the same general area. The car did not have a license plate. The Glendale police officer utilized the vehicle identification number (VIN) to identify the vehicle, and found it was the same car Davis had reported stolen. Given the Camry was connected to the robbery of Chase Bank, a federal financial institution, the bank robbery task force of the Federal Bureau of Investigation (FBI) got involved. The Glendale police officer relayed to the FBI that the Camry that hit the tree had the same VIN as the Camry Davis had reported stolen.

¶7　　　　Surveillance video from Glendale traffic cameras showed the Camry entering the parking lot at Westgate three minutes after Goodyear officers ended their pursuit. The video showed a person exiting from the driver's side door wearing the same clothes that Davis was seen wearing on the body camera recording of the Glendale police officer who spoke with Davis. Then, at 4:43 p.m., surveillance video showed the Camry exiting the parking lot at Westgate. It later crashed into a tree.

¶8　　　　The next day, Davis called Safeway Insurance Company, his insurer, and told the agent he had been the victim of an armed robbery, and his Camry was stolen around 4:30 p.m. the day before. During that recorded call, Davis said his Camry was stolen while parked at Westgate. Davis gave the agent his name, driver's license number, social security number, phone number, email address and mailing address.

¶9        In describing the incident to the agent, Davis said that he saw two "dudes" and asked them for something. Davis and the two individuals went back to his car to get his wallet when one of them put a gun to his face and said "give me everything, goofy." One of the individuals then took Davis' keys, wallet, identification and credit cards and "hopped" into his Camry. Davis told the agent that he called the police, who investigated and provided a police report. Davis said that he did not see if there were any witnesses. After this call, which lasted nearly 20 minutes, the insurance agent sent Davis a text message with his claim number, contact information for the claims department and told him that an adjuster would contact him about how to continue processing his claim.

¶10        The FBI later obtained telephone call and tracking records for Davis. A member of the FBI's cellular analysis team ran a cell site analysis on Davis' phone. The cell site analysis showed that, on the day of the robbery, Davis' phone, as well as those of other suspected accomplices, were within range of cell towers located between a half mile to a mile–and–a–half away from the Chase Bank that had been robbed.

¶11        Meanwhile, a Safeway Insurance claims adjuster contacted and then met with an FBI agent to photograph the damage to the car and obtain an estimate on repairs. Safeway Insurance later provided law enforcement a recording of the phone call Davis made to file a claim for his stolen Camry the day after the Chase Bank robbery and the photos of the damaged Camry.

¶12        This same FBI agent spoke with Davis on the phone, asking him to come to the FBI headquarters in Phoenix. After reading Davis his rights under *Arizona v. Miranda*, 384 U.S. 436 (1966), the agent interviewed Davis. Davis told the FBI agent a similar story of the alleged carjacking that he told to the Glendale police officer. However, Davis alleged that when driving around Westgate, he and his friend saw two Mexican "dudes" smoking marijuana, and that his friend saw one of the individuals pull out a gun and run around the Camry to get in the passenger's seat. Davis also said he had called his insurer and filed a claim. The FBI agent would later testify that Davis' statements were, at times, inconsistent with what Davis had said to the Glendale police officer as well as the insurance agent during the recorded call. At the end of the interview, the FBI agent arrested Davis.

¶13       Davis was charged with armed robbery, a Class 2 felony; unlawful flight from law enforcement, a Class 5 felony; false reporting to law enforcement, a Class 1 misdemeanor; and presenting a false, incomplete, or misleading insurance claim, a Class 6 felony.

¶14       A five-day jury trial followed in July 2023. During trial, the State moved to admit the recorded phone call between Davis and the insurance agent the day after the robbery. The State relied on the testimony of the FBI agent who interviewed Davis to authenticate Davis' voice on the recording. Davis argued the recording was not properly authenticated and that admission of the recording would violate his Confrontation Clause rights. The court initially precluded the recording, but after further consideration, admitted it in evidence.

¶15       After the State rested in its case in chief, Davis moved for a judgment of acquittal, which the court denied. After deliberations, the jury found Davis not guilty of armed robbery but guilty of the remaining three charges. Davis moved for a new trial, which the court denied. Given his prior criminal history, Davis was sentenced as a Category 3 repetitive offender. He was sentenced to concurrent presumptive prison terms of five years for unlawful flight and 3.75 years for fraudulent insurance practices. For the misdemeanor false reporting, the court imposed 30 days in custody, with credit for time served. Davis was properly awarded 311 days of presentence incarceration credit.

¶16       This Court has jurisdiction over Davis' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(2024).[1]

## DISCUSSION

¶17       Davis argues the superior court erred in (1) admitting his recorded call to the insurance company; (2) denying his motion for judgment of acquittal on the felony charges resulting in convictions and (3) denying his post-trial motion for new trial. The court addresses these arguments in turn.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

I.      **Davis Has Shown No Error in the Admission of the Recording.**

    A.      **The Superior Court Properly Could Conclude the Recording Was Authenticated.**

¶18      Davis argues the State failed to properly authenticate the recording because "[n]o testimony was offered by any witness who heard or was involved in the recorded transaction and, therefore, no witness could testify from firsthand knowledge that the audio recording accurately portrayed that event and who the parties were in the call." This court reviews this issue for an abuse of discretion. *State v. King*, 213 Ariz. 632, 635 ¶ 7 (App. 2006).

¶19      To provide authentication to support the admission of evidence at trial, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. 901(a). As applicable here, this requirement is satisfied where "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—[is] based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Ariz. R. Evid. 901(b)(5). Authenticity is shown where the proponent makes a sufficient showing "from which the jury could reasonably conclude that [the proffered evidence] is authentic." *State v. Lavers*, 168 Ariz. 376, 386 (1991) (citing cases).

¶20      The FBI agent authenticated Davis' voice on the recording based on his experience in interviewing Davis in person. That type of authentication of a voice recording is what Rule 901(b)(5) classically authorizes. The State also presented phone record evidence showing Davis called the insurance company at the time described in the recording. Davis' reliance on *State v. Haight-Gyuro* does not conflict with that conclusion, given that opinion rejected a defendant's challenge to the admission of a videotape recording. 218 Ariz. 356, 361 ¶ 19 (App. 2008) ("Accordingly, the trial court did not abuse its discretion by admitting the video recording into evidence under Rule 901."). Davis has shown no error in the superior court concluding the State had provided an adequate foundation for the admission of the recording.

### B. The Recording Was Not Precluded Under the Rule Against Hearsay.

**¶21** On appeal, Davis argues the superior court should have (1) redacted "from the recording any [of his] statements that were not against" his interest and (2) precluded the statements of the insurance agent as hearsay or not otherwise "admissible to complete the record." Rulings involving hearsay are reviewed for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 564 ¶ 77 (2014). Neither of Davis' arguments show error.

**¶22** A statement is not hearsay, and therefore not subject to the rule against hearsay, if (1) "[t]he statement is offered against an opposing party" and (2) "was made by the party in an individual or representative capacity." Ariz. R. Evid. 801(d)(2)(A). The recording was offered by the State against Davis, meeting the first requirement. And Davis made the statements offered against him in his individual capacity, meeting the second requirement. Davis' argument that the statements "were not against Mr. Davis's interest" appears to seek to invoke the statement against interest exception to the rule against hearsay. *See* Ariz. R. Evid. 804(b)(3). Although the State could have invoked that exception, instead, it properly sought admission of Davis' statements as an opposing party's statement. Thus, Davis' argument under Rule 804(b)(3) is irrelevant. Davis has shown no error in the superior court admitting in evidence his own recorded statements.

**¶23** For the first time on appeal, Davis argues the court erred by admitting the insurance agent's statements. Because he failed to make a timely, specific objection at trial, the review on appeal is for fundamental error. *See* Ariz. R. Evid. 103(e); *see also State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). Accordingly, as applicable here, Davis 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."' *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013) (citations omitted).

**¶24** To the extent Davis argues the agent's statements were hearsay, they were not offered for the truth of the matter asserted and, therefore, were not hearsay. *See* Ariz. R. Evid. 801(c)(2). "[W]ords or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant's implicit belief of a fact." *State v. Palmer*, 229 Ariz. 64, 66 ¶ 7 (App. 2012) (citation omitted). The insurance agent's statements were offered not to prove their truth but to show context for Davis' statements. Accordingly, such statements are not hearsay. *See id.* at 67 ¶ 10 (holding questions asked a criminal defendant are not hearsay because they

were not offered for the truth of the matter asserted). Because the insurance agent's statements were properly admitted for non-hearsay purposes, this court need not address Davis' arguments that they were inadmissible under the rule of completeness. *See* Ariz. R. Evid. 106. Because Davis has not shown the rule against hearsay precluded admissibility of the recording, he has failed to show error, let alone fundamental error resulting in prejudice.

### C. Confrontation Clause.

¶25 Davis argues admitting the recording in evidence violated his Confrontation Clause rights because "[t]he statements contained in the phone recording were testimonial in that they were made to establish a fact or prove a past event; a vehicle was stolen." This court reviews de novo evidentiary rulings implicating the Confrontation Clause. *State v. Ellison*, 213 Ariz. 116, 129 ¶ 42 (2006) (citation omitted).

¶26 To the extent the statements in the recording established the Camry was stolen, Davis made those statements, and Davis has no Confrontation Clause right to confront himself. *See* U.S. Const. amend VI. (providing criminal defendant the right "to be confronted with the witnesses against him"). Nor has he shown that the statements made by the insurance agent, which were not offered for the truth of the matter asserted, were "testimonial" and barred by the Confrontation Clause. *See, e.g.*, *State v. Fordson*, ___ Ariz. ___, ___ ¶ 14, 555 P.3d 52, 56 ¶ 14 (App. 2024) ("The Confrontation Clause 'applies only to testimonial hearsay.'" In that context, testimonial "is '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'").

¶27 For these reasons, Davis has shown no error in the superior court admitting the recording.

### II. The Court Did Not Err in Denying Davis' Motion for a Judgment of Acquittal on Counts Two and Four.

¶28 Davis argues the superior court erred in denying his motion for judgment of acquittal on the two felony counts as to which the jury found him guilty. A judgment of acquittal is appropriate "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419 (1980). Under Arizona law, direct and circumstantial evidence are treated the same. *See State v. Spears*, 184 Ariz. 277, 289 (1996). This court views the evidence in the light

most favorable to sustaining the verdict, *State v. Davolt*, 207 Ariz. 191, 212 ¶ 87 (2004) (citing cases), testing the sufficiency of the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505 ¶ 8 (App. 2005). This court reviews a claim of sufficiency of the evidence de novo. *See State v. Dansdill*, 246 Ariz. 593, 600 ¶ 19 (App. 2019) (citation omitted).

### A.    The Unlawful Flight Count.

**¶29**        As the superior court instructed the jury (using instructions Davis does not challenge on appeal), for the unlawful flight count, the State was required to prove that Davis (1) "who was driving a motor vehicle, willfully fled from or attempted to elude a pursuing official law enforcement vehicle" and (2) "[t]he law enforcement vehicle was appropriately marked showing it to be an official law enforcement vehicle." Davis argues the State failed to present substantial evidence to meet its burden of proof that Davis was driving the vehicle alleged to have fled or attempted to elude police.

**¶30**        The trial evidence included recorded video from Westgate showing Davis getting out of the green Camry driver's seat three minutes after police officers ended their pursuit. The video shows a person exiting from the driver's side door wearing the same clothes that Davis was seen wearing on the body camera video of the Glendale police officer who spoke with Davis. The State presented the body camera video showing Davis saying he (Davis) was driving the Camry when he pulled into Westgate. The State also presented testimony from the FBI agent that Davis corroborated he was driving his car when entering the Westgate parking lot. Because this evidence was sufficient to allow the jury to conclude Davis was driving the Camry when fleeing from or attempting to elude police, the superior court properly denied the motion for judgment of acquittal on the unlawful flight count.

### B.    False, Incomplete or Misleading Insurance Claim.

**¶31**        As the superior court instructed the jury, for the false, incomplete or misleading insurance claim count, the State was required to prove that Davis (1) "[w]ith intent to injure, defraud or deceive Safeway Insurance, did present or cause to be presented to Safeway a statement in support of a claim pursuant to an insurance policy" and (2) did so "[k]nowing the statement contained false, incomplete or misleading information concerning anything material to the claim." Davis argues the court should have granted his motion for judgment of acquittal because the

State failed to show that he "offered statements in support of a claim" and failed to show he "sought financial compensation or the return of his vehicle" by filing such a claim.

¶32        The trial evidence included that Davis called his insurance agent on his cell phone the day after his Camry was allegedly stolen. On that call, Davis recounted the carjacking story. The insurance agent provided Davis a claim number, contact information for the claims department and informed Davis an adjuster would be in contact to continue to process his claim. The State offered testimony that Davis admitted to the FBI agent he had contacted his insurance company to file a claim. The State also offered testimony that a claims adjuster from the insurance company contacted the FBI agent and went to the FBI Phoenix field office to take photos of the damage to the car. Thus, the State presented sufficient evidence to allow the jury to conclude that Davis provided statements in support of a claim and that he sought financial compensation for his Camry under an insurance policy. The superior court properly denied his motion for judgment of acquittal on count four.

## III.    The Superior Court Properly Denied Davis' Motion for New Trial.

¶33        Davis argues the superior court erred in denying his motion for new trial on the felony convictions because the trial evidence was contrary to the weight of the evidence and contrary to the law. *See* Ariz. R. Crim. P. 24.1(a), (c)(1). "A new trial is required only if the evidence was insufficient to support a finding beyond a reasonable doubt that the defendant committed the crime." *State v. Landrigan*, 176 Ariz. 1, 4 (1993) (citation omitted). A trial court has broad discretion in addressing a motion for new trial, and this court reviews the resulting ruling for an abuse of that discretion. *State v. Fischer*, 242 Ariz. 44, 48 ¶ 10, 49 ¶ 15 (2017) (citations omitted). "Trial judges are given such broad discretion because, like the jury, they observed the trial." *Id.* at 49 ¶ 15. Given the discretion owed by the superior court, this court on appeal owes substantial deference to a superior court's ruling on a motion for new trial. *See id.* at 50 ¶21, 51 ¶ 27 (citing authorities). On this record, Davis has not shown that the superior court abused its discretion in denying his motion for new trial.

¶34        Davis argues that the evidence presented at trial was "insufficient and inadequate proof for a reasonable person to uphold a finding that Mr. Davis committed the crime of unlawful flight from a pursuing law enforcement vehicle beyond a reasonable doubt." And as discussed above, the State provided sufficient evidence for a reasonable jury to find beyond reasonable doubt that Davis was the driver of the car

evading the police. To the extent Davis' argument relies on the admissibility of the recording, it fails for the reasons discussed above. This court defers "to the discretion of the trial judge who tried the case and who personally observed the proceedings." *Id.* at 50 ¶ 21. On this record, Davis has not shown the superior court abused its discretion by denying his motion for new trial.

## CONCLUSION

¶35          Davis' convictions and resulting sentences are affirmed.

